## A98A1754. BARBER v. THE STATE.
### (512 SE2d 48)

RUFFIN, Judge.

Terry Barber was convicted of armed robbery, aggravated assault, and criminal attempt to commit robbery. He appeals, asserting numerous errors. Because none of these assertions has merit, we affirm.

On December 10, 1996, Janet McGlothlin and Colleen Myrhol went shopping at Glynn Place Mall. They parked under a street light in the mall parking lot at about 6:30 p.m. After they exited their car, a man wearing a dark flannel shirt and a dark knit cap walked up to Myrhol, pointed a gun at her, and demanded that she give him her purse. Myrhol refused, began to scream, and ran toward the store to seek help. The gunman then pointed his gun at McGlothlin and demanded her purse. McGlothlin gave the man her purse, and he then ran toward the store. McGlothlin yelled and ran after him.

Joseph Hartley, chief of police for the City of Odum Police Department, testified that he and his wife were shopping at Glynn Place Mall on the day of the robbery. As Hartley was walking in the parking lot, he heard screams and saw a man running in his direction. When the man was about three or four feet from Hartley, he stopped, pulled out a gun, and pointed it at Hartley. McGlothlin and Myrhol both saw the gunman run toward Hartley, and McGlothlin saw him point what she assumed was his gun at Hartley. Hartley backed off with his hands up, and the man ran away. Hartley saw the man get into the passenger side of a dark colored Cadillac driven by a light-skinned individual with long sideburns. Hartley testified that when the man was approaching him, the man threw something toward the building. Hartley went to retrieve the item and saw that it was a woman's pocketbook.

Officer Ladell Jackson of the Glynn County Police Department arrived at the scene at about 6:44 p.m. McGlothlin and Hartley gave Jackson descriptions of the gunman, the driver, and the car, and Jackson broadcast this information over his police radio. A few minutes later, Lieutenant Scott Trautz was en route to the mall on U. S. 17 when a car matching the description crossed the yellow centerline and almost collided with him. Trautz stopped the car, which was driven by a male named Paul Tillman. Barber was in the passenger seat. Tillman gave Trautz permission to search the car, and Trautz located a black knit cap and flannel shirt under the front seat.

The police drove Barber and Tillman back to the mall, and Chief Hartley identified Barber as the individual who pointed a gun at him. Hartley was then taken to the scene of the traffic stop, where he identified Tillman's automobile as the one in which Barber rode away. Hartley also identified the cap and flannel shirt found in Tillman's car as those worn by the gunman.

McGlothlin testified that she was unable to positively identify Barber at the mall, while he was sitting in the back of the police vehicle, because he turned his head away. Myrhol stated that she waited until she got to the police station to make an identification because she had just experienced an asthma attack and taken medication. Myrhol and McGlothlin were then taken to the police station, where they positively identified Barber as the gunman. Myrhol, McGlothlin, and Hartley all identified Barber at trial as the gunman.

Tillman, who was also indicted for the robbery, testified at trial for the prosecution pursuant to a grant of limited immunity. He testified that, on the date of the robbery, he dropped Barber off at the mall while he pulled into a parking space and remained in his automobile. About 15 minutes later, Barber came running back to the car, jumped in, and said, "Go, go, go." Tillman testified that he saw Chief Hartley pointing a gun at the car as he drove away. Hartley denied drawing his weapon during the encounter.

Barber was charged with armed robbery, relating to his taking of McGlothlin's purse; criminal attempt to commit robbery, relating to his demand for Myrhol's purse; and aggravated assault, relating to his pointing a gun at Hartley. The jury found him guilty on all three counts.

1. In his first enumeration, Barber contends the trial court erred in denying his motion to suppress evidence of McGlothlin's and Myrhol's pre-trial identifications of Barber at the police station, arguing that the identification procedures were unduly suggestive.

"A two-part test is used to determine whether identification evidence should be excluded. The threshold inquiry is whether the identification procedure was impermissibly suggestive. Only if it was need the court consider the second question: whether there was a

very substantial likelihood of irreparable misidentification." (Punctuation omitted.) *Odim v. State*, 228 Ga. App. 158, 159 (2) (491 SE2d 218) (1997).

Barber argues that the identification procedures were impermissibly suggestive because he was shown to the witnesses in a one-on-one setting, handcuffed, and in the presence of police officers. See *Banks v. State*, 203 Ga. App. 355 (416 SE2d 866) (1992). However, even if a showup is suggestive, evidence regarding a pre-trial identification is not inadmissible unless, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification. Id. "The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (Punctuation omitted.) *Killens v. State*, 184 Ga. App. 717, 720 (3) (362 SE2d 425) (1987).

Applying these factors, we find that the trial court did not err in concluding that there was no substantial likelihood of irreparable misidentification. Although the robbery was short in duration, both Myrhol and McGlothlin had a clear opportunity to observe the attacker. The robbery occurred in a well-lit area beneath a street light. The gunman came very close to each of the witnesses — about two feet from McGlothlin and four or five feet from Myrhol. McGlothlin testified that she looked directly at the gunman's face during the incident. Myrhol testified that she intentionally made eye contact with the gunman and paid close attention to his face during the robbery. Both witnesses testified that they had no doubt about their identification of Barber. Myrhol also testified that, when she heard Barber's voice at the police station, she recognized it as the gunman's voice. McGlothlin gave a detailed, accurate description of the attacker to Officer Jackson when he arrived on the scene. Finally, only about an hour or an hour and a half elapsed between the time of the robbery and the identification at the police station.

Moreover, the identification of Barber as the gunman was not solely dependent on Myrhol's and McGlothlin's testimony. Chief Hartley positively identified Barber as the individual who threw away McGlothlin's purse, pointed a gun at him, and then got into a car and rode away. The driver of the car, Tillman, testified that Barber came running to the car and told him to drive away, while Hartley was pointing what appeared to be a gun at the car. After Tillman and Barber were stopped by Lieutenant Trautz, Hartley positively identified Barber, the clothes he was wearing at the time of the incident, and the automobile. Thus, quite apart from Myrhol's and

McGlothlin's testimony, there was significant evidence establishing that Barber was the gunman.

Under all of these circumstances, the trial court did not err in refusing to exclude evidence of Myrhol's and McGlothlin's pre-trial identification of Barber. See *Johnson v. State*, 209 Ga. App. 632, 633-634 (2) (434 SE2d 169) (1993).

2. Barber also contends that the trial court erred in allowing Myrhol and McGlothlin to make an in-court identification of him as the attacker. However, Barber's motion to suppress was limited to evidence of the pre-trial identification at the police station, and Barber did not object when these witnesses identified him in court as the attacker.[1] Thus, he has waived the right to object to the in-court identifications. See *Smith v. State*, 195 Ga. App. 669 (1) (394 SE2d 558) (1990). Moreover, this enumeration is based solely on Barber's contention that the pre-trial identification was impermissibly tainted, which contention was rejected in Division 1. Finally, there was an independent basis for both Myrhol's and McGlothlin's in-court identifications of Barber, and both witnesses testified that they were certain Barber was the individual who attacked them. See *Arnold v. State*, 198 Ga. App. 449, 450 (1) (402 SE2d 69) (1991). Accordingly, this enumeration is without merit.

3. Barber contends that the evidence was insufficient to support each of his convictions. With respect to the armed robbery and attempted robbery convictions, Barber's contention is based solely upon his claim that Myrhol's and McGlothlin's pre-trial and in-court identifications were inadmissible and lacking in credibility. We have held above that the identification testimony was admissible, and questions of credibility are for the jury, not this Court. We determine only whether, viewed in the light most favorable to the verdict, the evidence was sufficient to enable a rational trier of fact to conclude that the defendant was guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Bierria v. State*, 232 Ga. App. 622, 624 (1) (502 SE2d 542) (1998). So viewed, the evidence of Barber's guilt was overwhelming and clearly authorized the jury to find him guilty of armed robbery and attempted robbery.

With respect to the charge of aggravated assault, Barber argues that Hartley's testimony was the only evidence that he in fact

---

[1] Although Barber's written motion to suppress could be read to encompass both the pre-trial and in-court identifications, Barber's attorney during the hearing on the motion clearly limited the relief sought, asking only for suppression of the "identification at the police station." See *Roberson v. State*, 228 Ga. App. 416, 420 (3) (491 SE2d 864) (1997) (defendant waived issue raised in written motion in limine by not addressing it at hearing); *Nelson v. State*, 224 Ga. App. 623-624 (1) (481 SE2d 605) (1997) (state waived issue raised in written motion to suppress by failing to raise it at hearing).

pointed a gun at Hartley. However, "[t]he testimony of a single witness is generally sufficient to establish a fact. OCGA § 24-4-8." (Punctuation omitted.) *Hawkins v. State*, 230 Ga. App. 627, 630 (3) (497 SE2d 386) (1998). Moreover, Hartley's testimony was supported by McGlothlin, who testified that she saw Barber point what she believed was his gun at Hartley. Although the gun was never recovered by the police, and Barber's co-indictee, Tillman, claimed that Barber did not have a gun, it was the jury's function to weigh the credibility of the witnesses' testimony, and the jury resolved these issues adversely to Barber. The evidence was clearly sufficient to support his conviction of aggravated assault.

4. Barber contends that trial counsel was ineffective because he failed to inquire into Barber's mental state and request a psychiatric evaluation. "To prove a claim of ineffective assistance of trial counsel, a criminal defendant must show both deficient performance by counsel and a likelihood that counsel's deficient performance prejudiced the defense, depriving the defendant of a fair trial. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, [2064,] 80 LE2d 674) (1984)." *Zant v. Moon*, 264 Ga. 93, 97 (2) (440 SE2d 657) (1994).

Trial counsel testified at the motion for new trial hearing that he spoke with Barber frequently and saw no indication that there was any need for a psychiatric evaluation. Although Barber contends that counsel should have undertaken a more thorough inquiry into his mental state, Barber failed to present any evidence at the hearing indicating that such an evaluation was appropriate or would have benefited him at trial. The only relevant facts testified to by Barber at the hearing were that (1) he was knocked unconscious in a car accident in 1995, (2) he has had "seizures" since he was 12 years old, twice causing him to "black out" while driving, and (3) when he was incarcerated previously, he was sent to Augusta Hospital "to get my head examined because they wanted to know what was wrong." Barber did not testify that he had ever been hospitalized for any type of mental disorder, nor did he introduce any hospital records relating to his alleged admission to Augusta Hospital.

If a defendant wishes to claim ineffectiveness based on trial counsel's failure to request a psychiatric evaluation, it is not enough to show merely that counsel unreasonably failed to inquire into his mental state — he must show a likelihood that such an evaluation would have affected the outcome at trial. See *Morris v. State*, 226 Ga. App. 535, 538-539 (2) (b) (488 SE2d 685) (1997). Although Barber's testimony shows that he may have occasionally had seizures of some sort, been injured in a car accident a year or two before the robbery, and been sent to a hospital at some point for an unexplained reason, there is nothing to suggest that he has any history of mental disorders that would have been relevant to the trial of this case. Accord-

ingly, Barber has not shown a substantial likelihood that a psychiatric evaluation would have had any effect on the outcome of the trial, and the trial court thus did not err in denying the claim of ineffective assistance on this ground.

5. Barber also claims that trial counsel was ineffective in failing to offer any evidence in mitigation during the sentencing phase. However, Barber makes no attempt in his brief to show what types of mitigating evidence should have been introduced or how such evidence would have affected the sentence, other than to state that "mitigation would likely have had a positive influence." Thus, he has failed to carry his burden of showing that he was prejudiced by counsel's performance. Moreover, trial counsel testified that he had several discussions with Barber about trial strategy, including which witnesses to call in the sentencing phase, and that Barber had no one who would come forward on his behalf. The attorney also spoke with Barber's mother, but determined that she suffered from a nervous condition that would prevent her from testifying. Under these circumstances, the trial court did not err in denying Barber's claim of ineffective assistance on this ground. See *DeYoung v. State*, 268 Ga. 780, 784-786 (5) (493 SE2d 157) (1997).

*Judgment affirmed. Beasley, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 8, 1999.

*Timothy L. Barton, Patrick C. Kaufman*, for appellant.
*Stephen D. Kelley, District Attorney, Charles K. Higgins, Assistant District Attorney*, for appellee.