## A01A1609. GERRARD v. THE STATE.
### (556 SE2d 131)

RUFFIN, Judge.

Ronald Gerrard, Jr. was charged by accusation with theft by receiving stolen property, and following a jury trial, he was found guilty of the offense. Gerrard appeals, asserting that the trial court lacked jurisdiction because he did not waive his right to indictment by a grand jury, that the trial court erred in denying his motions to suppress evidence, and that he was denied effective assistance of trial counsel. For reasons which follow, we affirm.

Viewed in a light most favorable to support the jury's verdict,[1] the evidence showed that on March 21, 2000, Gerrard drove a pickup truck to a business called Auto Quick and asked the attendants, Christopher Alley and Jason Ward, if they could change a flat tire on the truck. After looking at the tire, Alley told Gerrard that he needed the lug nut key to remove the wheel, and Gerrard responded that he did not have the key. According to Alley, Gerrard "was real jittery and rushing [him]" and stated: "I've just got to get this wheel off my truck and get it back to my boss." Gerrard then asked Alley to cut the wheel off the truck. Alley pointed to a nearby business, Honey Creek Tire, and told Gerrard he would call and ask if someone there could remove the wheel.

When Alley returned to the truck after making the call, Gerrard was not there. As Alley and Ward looked at the truck, they noticed pry marks on the passenger door, that the ignition was punched out, that a window was broken out, and that the tag was expired. Suspecting that the truck had been stolen, Alley called the police. When Alley went back outside, Gerrard was driving away toward Honey Creek Tire.

Shortly thereafter, Deputy Sheriff Chad Frey responded to Auto Quick to investigate the report of a possible stolen vehicle. Alley and Ward described the truck to Deputy Frey, told him what aroused

---

[1] See *Loveless v. State*, 245 Ga. App. 555 (1) (538 SE2d 464) (2000).

their suspicions, and informed him that Gerrard drove to Honey Creek Tire. Although both witnesses also started describing Gerrard, Frey testified that he "cut them off because [he] wanted to get [to Honey Creek Tire] to avoid a chase." While en route to Honey Creek Tire, Deputy Frey received confirmation over the radio that the truck had been stolen.

Upon arriving at Honey Creek Tire, Deputy Frey saw Gerrard standing by the truck and asked him if he was with the vehicle. Gerrard answered yes, but told Frey that the truck belonged to his friend. Deputy Frey took Gerrard into custody. At some point, Gerrard insisted that his friend who owned the truck was next door at a gas station. After confirming that Gerrard did not have a friend at the gas station, Deputy Frey drove him back to Auto Quick where both Alley and Ward identified him as the driver of the pickup truck.

1. Relying on OCGA § 17-7-70, Gerrard asserts that the trial court lacked jurisdiction to proceed with a trial based upon the accusation because he did not waive his right to indictment by a grand jury. We disagree. The State charged Gerrard with theft by receiving stolen property under OCGA § 16-8-7, and our Code permits this offense to be tried upon accusation even when the defendant has not waived indictment.[2] Accordingly, this assertion is without merit.

2. Gerrard asserts that the trial court erred in denying his motion to suppress evidence because Deputy Frey lacked probable cause to arrest him. Again we disagree. "A warrantless arrest is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense."[3] In this case, it is undisputed that prior to arresting Gerrard, Deputy Frey determined that he was driving a stolen vehicle. This information authorized Frey to arrest Gerrard for possessing stolen property.[4] Accordingly, the trial court properly denied this motion to suppress.

3. Gerrard next asserts that the trial court erred in denying his motion to suppress evidence of Alley's and Ward's out-of-court identifications because they were the product of an impermissibly suggestive showup. In assessing the admissibility of this testimony, we must first inquire "whether the identification procedure was impermissibly suggestive."[5] In making this determination, we are mindful

---

[2] See OCGA § 17-7-70.1 (a) (1) (B) (Supp. 2001).

[3] (Punctuation omitted.) *Bishop v. State*, 268 Ga. 286, 288 (2) (486 SE2d 887) (1997).

[4] See *Watson v. State*, 181 Ga. App. 512, 513-514 (3) (352 SE2d 828) (1987); see also *Jackson v. State*, 236 Ga. App. 492, 495 (2) (512 SE2d 24) (1999).

[5] (Punctuation omitted.) *Barber v. State*, 236 Ga. App. 294, 295 (1) (512 SE2d 48) (1999).

that, notwithstanding the dangers inherent in bringing a single suspect before an eyewitness for identification, under the circumstances of this case, such procedure not only aided law enforcement, but would also have benefitted an innocent subject by expediting his early release.[6]

That said, we cannot ignore the inherent danger that, when presented with a single suspect, Alley and Ward could have misidentified Gerrard. Thus, we must evaluate "whether there was a very substantial likelihood of irreparable misidentification."[7] We consider "the opportunity of [Alley and Ward] to view [Gerrard] at the time of the crime, [their] degree of attention, the accuracy of [their] prior description of [Gerrard], the level of certainty demonstrated by [them] at the confrontation, and the length of time between the crime and the confrontation."[8]

The record shows that both witnesses initially saw Gerrard during the daytime when they attended to his request for assistance. Throughout the encounter, the witnesses focused their attention exclusively on Gerrard and his predicament. As for their description of Gerrard, the transcript merely shows that at trial, both witnesses described him racially, wearing a white t-shirt, baggy black jogging pants, and a rust-colored jacket. Both witnesses also testified that when they saw Gerrard in the back of the sheriff's car, he was wearing the same clothes, but had removed the rust-colored jacket. Finally, the record shows that only about 20 minutes elapsed between the time Alley and Ward first encountered Gerrard and the time Deputy Frey brought him back for identification and that both witnesses were certain that he was the driver of the truck. Under these circumstances, there was not a substantial likelihood that Alley and Ward misidentified Gerrard, and the trial court therefore did not err in denying his motion to suppress the evidence.[9] Furthermore, we are compelled to note that, assuming arguendo, there was a substantial likelihood of irreparable misidentification, Deputy Frey testified that he found Gerrard with the stolen vehicle. Thus, evidence of the showup did not add materially to the proof that Gerrard possessed the stolen truck.

4. Finally, Gerrard asserts that he was denied effective assistance of trial counsel. The record reveals that the trial court assigned a public defender to represent Gerrard. However, Gerrard did not want to be represented by a public defender and refused to speak with appointed counsel about the case. One week before trial, Ger

---

[6] *Salazar v. State*, 245 Ga. App. 878, 879 (1) (539 SE2d 231) (2000).
[7] (Punctuation omitted.) *Barber*, supra at 295-296 (1).
[8] (Punctuation omitted.) Id. at 296 (1).
[9] Id. at 297.

rard informed the court that he wanted to represent himself. The trial judge informed Gerrard of his right to counsel and the possible adverse consequences of his request, but told him that if he still wanted to terminate appointed counsel when the trial commenced, the request would be granted. The day before trial, Gerrard again insisted that he wanted to represent himself. The trial court granted the request, but required appointed counsel to stand by in case Gerrard asked for assistance at trial.

Gerrard, who is represented by new counsel on appeal, now argues that his appointed counsel was ineffective because he failed to subpoena witnesses who could have refuted that there was any damage to the truck and because he failed to secure transcripts of a motion hearing and a probable cause hearing. Gerrard also argues that the court should have appointed him new counsel when he expressed dissatisfaction with appointed counsel.

To establish ineffective assistance of counsel, Gerrard must demonstrate both that his trial counsel's performance was deficient and that he was prejudiced to the extent that, but for the deficiencies, there is a reasonable probability that the trial outcome would have been different.[10] We review a trial court's finding of effective assistance under the clearly erroneous standard.[11]

In this case, it is clear that counsel's performance was reasonable and that if Gerrard was deprived of effective assistance, it was only because he refused to communicate with his appointed counsel and chose to represent himself at trial.[12] The record reflects that Gerrard had unreasonable expectations of counsel based upon his own misconceptions about criminal procedure.[13] Gerrard was entitled to reasonably effective assistance, he was offered such assistance, and he rejected the offer. Gerrard may not now complain that he should get a new trial because the court failed to appoint new counsel of his own choosing.[14]

Furthermore, to the extent that the decision not to subpoena certain witnesses can be attributed to appointed counsel rather than Gerrard, we must assume that such decisions were matters of trial strategy which we will not second-guess on appeal.[15] In addition, the

---

[10] *Hall v. State*, 243 Ga. App. 804, 805 (534 SE2d 196) (2000).

[11] Id.

[12] See *Daughtry v. State*, 225 Ga. App. 45, 46 (2) (482 SE2d 532) (1997); *Rivers v. State*, 250 Ga. 303, 308 (6) (298 SE2d 1) (1982).

[13] It appears that Gerrard misconstrued legal authorities he read and faulted counsel for failing to obtain an affidavit that did not exist, for failing to immediately appeal an interlocutory order, and for failing to prevent the State from complying with the speedy trial demand he asked counsel to file.

[14] See id.

[15] *Hall*, supra at 806.

record is devoid of any evidence that the uncalled witnesses would have testified that there was no damage to the truck. Thus, Gerrard has not shown that he was harmed by counsel's performance. As for the transcripts, the record belies Gerrard's claim that counsel failed to obtain them. During a colloquy with the trial judge, Gerrard acknowledged receiving a copy of the motion hearing transcript and a tape recording of the probable cause hearing.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED AUGUST 22, 2001 —
RECONSIDERATION DENIED DECEMBER 4, 2001 — 

*Fred R. White*, for appellant.
Ronald Gerrard, Jr., *pro se.*
*Richard R. Read, District Attorney, Dabney Y. Kentner, Assistant District Attorney*, for appellee.