## A05A0042. JOHNSON v. THE STATE.
(614 SE2d 128)

MIKELL, Judge.

Following a bench trial, Romeno M. Johnson was convicted of armed robbery and sentenced to fifteen years, with ten to serve. On appeal, Johnson alleges that the trial court erred in denying his motion for new trial, which challenged the sufficiency of the evidence and the effectiveness of his trial counsel. We affirm.

1. Johnson first argues that the trial court erred by rejecting his challenge to the sufficiency of the evidence.

> On appeal from a criminal conviction, we construe the evidence in a light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient for the trier of fact to find [Johnson] guilty beyond a reasonable doubt. Furthermore, in bench trials, the findings of the trial court will not be set aside unless clearly erroneous, and regard must be given to the trial court's opportunity to assess the credibility of the witnesses.[1]

Viewed in the light most favorable to the verdict, the evidence adduced at trial shows that on December 13, 2002, Andrew Stapleton,

---

[1] (Punctuation and footnotes omitted.) *Hughes v. State*, 266 Ga. App. 652 (1) (598 SE2d 43) (2004).

the clerk at a convenience store on Rocky Creek Road in Bibb County, was robbed at gunpoint. Stapleton testified that the robber had been in the store several times that day, that the store was well lit, and that the robber was not wearing a mask or anything else that obscured his face. Stapleton further testified that he was behind the counter and that the robber was standing just on the other side of it; that the robber pointed a small handgun at him; that the robber demanded all the money in the drawer, which Stapleton gave him; and that the robber then fled the store. Stapleton determined that the drawer contained approximately $540. The store owner later told police that between $570 and $590 had been taken.

After the robber fled, Stapleton immediately contacted the police, who came quickly because they happened to be patrolling the area. Stapleton described the robber to the police, who returned with Johnson within 20 minutes. At that time, as well as at trial, Stapleton positively identified Johnson as the man who robbed him. Stapleton indicated that Johnson had been a regular customer at the store for two years.

Sergeant Robert Grabowski with the Macon Police Department testified that when he arrived at the store, he reviewed a security videotape, which showed the robber wearing camouflage clothing and a black or dark blue ball cap. Grabowski decided to look for the perpetrator at an apartment complex located less than 100 yards away from the store. When he drove into the complex in his marked patrol car, Grabowski saw a stopped car with a black male matching the suspect's description standing nearby. Grabowski backed up to ask the men if they had seen anyone, and as soon as he put his car in reverse, the black male looked at him and jumped into the back of the stopped car. This strange behavior prompted the officer to ask the driver for his license and insurance, which the driver produced. There was another passenger in the front seat. The back seat passenger refused to state his name and claimed to be the driver's nephew. The driver could not identify the passenger, so Grabowski asked the passenger to step out of the car. Grabowski patted him down for weapons. The man was unarmed, but there were fresh abrasions on his ankles, which, according to Grabowski, were consistent with having run through the woods leading from the store to the complex. Grabowski then placed the man in the back of his patrol car and asked the driver of the other car for consent to search his vehicle. The driver consented, and Grabowski found $570 in cash stuffed between the seats in the back. Grabowski drove the suspect to the convenience store, where Stapleton identified him as the man who robbed him.

Sherman Grable, the driver of the vehicle in which the money was found, testified that he had picked up his girlfriend's son from the apartment complex when Johnson asked Grable for a ride and offered

him $20. After his girlfriend's son vouched for Johnson, Grable agreed. Grabowski then drove up. Grable testified that, as he had informed the officer, he was not related to Johnson.

After he was arrested and *Mirandized,* Johnson asked to speak with a detective he knew, Andrea Grinsted. According to Grinsted, Johnson said, "This is big isn't it? . . . It's going to be five or ten years, isn't it?" After Grinsted told Johnson that the clerk had identified him, Johnson admitted that he had been in the store. Grinsted told Johnson that he should not have robbed the store, and he replied, "not for $590." Grinsted had not told Johnson how much money had been taken in the robbery.

Contrary to Johnson's argument, the evidence recounted above was more than sufficient for any rational trier of fact to find him guilty of armed robbery beyond a reasonable doubt.[2]

2. Johnson next complains that his trial counsel was ineffective in two respects: (1) failure to prepare adequately for trial, and (2) failure to file a motion to suppress the one-on-one showup identification. "To establish that trial counsel was ineffective, [Johnson] must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense such that there is a reasonable probability that, but for the unprofessional conduct, the outcome of the trial would have been different."[3] Moreover, the trial court's findings of fact following an evidentiary hearing on the effectiveness of counsel will not be disturbed unless they are clearly erroneous.[4] In the case at bar, Johnson has demonstrated no basis for finding error in the trial court's conclusion that he received effective assistance of counsel at trial.

(a) Johnson complains that his appointed trial counsel, Bennett Talmadge Willis, Jr., inadequately prepared for trial because he consulted with Johnson less than three times. In this regard, Johnson testified at the hearing held on his motion for new trial that he met with Willis only twice before trial for brief periods of time; that Willis never visited him in jail; and that Johnson had to hire another lawyer to obtain his release on bond. However, when questioned by the prosecutor and the trial judge, Johnson admitted that he had previously expressed satisfaction with Willis. In fact, the trial transcript reveals the following colloquy:

---

[2] See generally *Meyers v. State,* 249 Ga. App. 248 (547 SE2d 781) (2001); *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] (Punctuation and footnote omitted.) *Spencer v. State,* 275 Ga. 192, 193 (2) (563 SE2d 839) (2002).

[4] *Jones v. State,* 270 Ga. App. 368, 370 (2) (606 SE2d 592) (2004); *Gerrard v. State,* 252 Ga. App. 767, 770 (4) (556 SE2d 131) (2001).

THE COURT: At one time not too many weeks ago, I think you and your father went to the indigent defense office and talked to Mrs. [Jacqueline] Gray [the Indigent Defense Administrator for the Macon Judicial Circuit] ... because ... you had some reservations about your lawyer and you wanted to have a new lawyer appointed to represent you, is that true?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Since that time, obviously, you have met with Mr. Willis. Is it still your desire to have a new lawyer appointed or is it your desire to stay with Mr. Willis?

THE DEFENDANT: Stay with Mr. Willis.

THE COURT: Okay. Is that a decision you have made in consultation with your father?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Everybody's in agreement about that?

THE DEFENDANT: Yes, sir.

THE COURT: I see your father nodding his head too. So I'm assuming he concurs in that decision. So you're happy with your lawyer then?

THE DEFENDANT: Yes, sir.

At the new trial hearing, Johnson added that he and his father had made the decision to stay with Willis in consultation with Willis as well.

Willis testified that he met with Johnson six or eight times in preparation for trial and that Johnson never informed him of any evidence or witnesses that he wished for Willis to investigate. Moreover, Willis indicated that Johnson withheld information from him. Willis suspected that Grable was driving the getaway car, but when Willis reviewed Grable's statement with Johnson and his parents, they denied knowing Grable. After Grable testified and denied knowing Johnson, Johnson and his mother told Willis that they knew Grable very well. Willis therefore testified that he was deprived of the opportunity to cross-examine Grable adequately. "In light of this testimony, we conclude that [Johnson] failed to carry his burden to prove that counsel's performance in preparing for trial was deficient."[5]

(b) Johnson contends that Willis was ineffective for failing to move to suppress Stapleton's identification of him at a one-on-one showup. Johnson asserts that the identification was impermissibly

---

[5] (Citation, punctuation and footnote omitted.) *Vanholten v. State*, 271 Ga. App. 782, 783 (2) (a) (610 SE2d 555) (2005).

suggestive because he was wearing different clothing than that which was depicted on the videotape, and Stapleton could not see Johnson's clothing at the time of the showup. "Although one-on-one show-ups have been sharply criticized, and are inherently suggestive, the identification need not be excluded as long as under all the circumstances the identification was reliable notwithstanding any suggestive procedure."[6]

> In evaluating the likelihood of misidentification, we consider factors such as the witness's opportunity to [view the accused] at the time of the crime, the witness's degree of attention, the accuracy of the witness's earlier description of the [accused], the witness's level of certainty demonstrated at the confrontation, and the length of time between the crime and the confrontation.[7]

As noted above, the evidence shows that Stapleton had known Johnson as a customer for two years and had observed him in the store several times that day; the store was well lit; Johnson's face was not obscured; the time between the crime and the confrontation was brief; and Stapleton positively identified Johnson at the time of the confrontation as the man who robbed him. Willis testified that he did not file a motion to suppress the showup identification because he thought it would be a waste of the court's time. Willis's decision falls within the realm of trial strategy.

> Trial strategy and tactics do not equate with ineffective assistance of counsel. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that defendant and his present counsel disagree with the decisions made by trial counsel does not require a finding that defendant's original representation was inadequate.[8]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED APRIL 18, 2005.

*Renate D. Moody*, for appellant.

---

[6] (Citation omitted.) *Jefferson v. State*, 206 Ga. App. 544, 546 (2) (425 SE2d 915) (1992).

[7] (Citation omitted.) *Frazier v. State*, 263 Ga. App. 12, 14-15 (3) (a) (587 SE2d 173) (2003).

[8] (Citation and punctuation omitted.) *Aleman v. State*, 227 Ga. App. 607, 612 (3) (b) (489 SE2d 867) (1997).

*Howard Z. Simms, District Attorney, Dorothy V. Hull, Assistant District Attorney*, for appellee.