## 67230. LEVITT v. THE STATE.

SHULMAN, Presiding Judge.

Appellant was convicted of armed robbery and moved for a new trial on the grounds that he was incompetent to stand trial and that the trial court erred in denying his motion to suppress the evidence obtained in a warrantless search of his motel room. This appeal follows the trial court's denial of appellant's motion.

1. The trial court construed appellant's motion in regard to his alleged incompetence to stand trial as an extraordinary motion for new trial, since the objection was not raised at trial and the contention was based solely on newly discovered evidence not contained in the record.

An extraordinary motion for new trial is not directly authorized by statute in this state but is indirectly authorized by OCGA §§ 5-5-40, 5-5-41. *Dick v. State*, 248 Ga. 898 (1) (287 SE2d 11). The requirements for a successful extraordinary motion for new trial based on newly discovered evidence are set out in *Dick*, supra, p. 900. The key determination to be made in the present case is whether the newly discovered evidence is so material that it would probably produce a different verdict.

"[T]he issue of mental competency to stand trial is the same whether raised before, during or subsequent to trial, and if, in fact, [appellant] was not competent at the time of his trial but is now competent to stand trial, a new trial should be granted." *Smalls v. State*,

153 Ga. App. 254, 256 (265 SE2d 83). In *Smalls*, this court recognized the dilemma facing a trial judge in determining a person's competency, noting that he must rely on opinions of psychiatrists as to an individual's mental condition, which opinions are imprecisely based on observation, behavior, and what an individual chooses to tell a psychiatrist about his background and actions. The court concluded that a person's mental condition is at best an "educated guess" except in the most extreme cases.

Appellant's counsel averred by affidavit that appellant was extremely uncooperative in the preparation of his defense. Appellant refused to discuss the circumstances surrounding his arrest and also refused to reveal where he was from or the names of any relatives. Subsequently, appellant informed his counsel that he wished to plead guilty, but his plea was rejected by the trial court. At trial, appellant agreed to testify in his own behalf, but reconsidered and refused to do so.

After appellant's conviction, his parents learned of their son's incarceration and promptly drove from Illinois to Savannah to talk with appellant's counsel. They informed appellant's counsel that appellant had previously been confined to a psychiatric ward after he had been arrested in 1974 for discharging a firearm in front of a police station and for possession of marijuana. Any record of those offenses had been expunged from the system pursuant to the Illinois First Offender Act.

The Supreme Court, in *Crawford v. State*, 240 Ga. 321, 326 (240 SE2d 824), stated that the issue in a case such as the one at bar is whether the defendant understood the nature and object of the proceedings against him, whether the defendant rightly comprehended his own condition in reference to such proceedings, and, finally, whether the defendant was capable of rendering effective assistance to his attorney in the preparation of his defense. In connection with the last criterion, it is well settled that the relevant inquiry is not whether the defendant *would* assist in his defense, but whether he *could* do so. *Banks v. State*, 246 Ga. 178 (3) (269 SE2d 450).

Upon request by defense counsel, the trial court ordered a psychiatric examination of appellant. At the hearing on appellant's motion for new trial, Dr. Miguel D. Bosch, the state psychiatrist, testified that appellant was initially uncooperative when he attempted to talk to him. The doctor stated that after several visits, appellant inexplicably began to cooperate and that he also agreed to take medication that he had previously refused. Dr. Bosch was unable to finish his analysis of appellant because of appellant's transfer to the corrections facility in Jackson. Even so, the doctor was able to testify that appellant did not suffer from specific delusional beliefs of persecution nor was he overly psychotic or out of touch with reality. Additionally,

Dr. Bosch stated that appellant was aware of the import of the charges against him and that he was in court because of it. He also admitted that it was in fact possible that appellant's refusal to cooperate with his attorney could have stemmed from a simple unwillingness to communicate. However, while acknowledging the inconclusiveness of his analysis, Dr. Bosch stated that it was his opinion that appellant suffered from a paranoiac condition that would preclude appellant from effectively assisting his attorney in the preparation of his case. Therefore, in essence, Dr. Bosch testified that appellant met the first two requirements outlined in *Crawford*, but failed to satisfy the final one because of his paranoiac condition.

Based on its observation of the trial and the testimony of Dr. Bosch and defense counsel, the trial court ruled that appellant's mental condition at the time of the trial was such that he adequately understood the nature of the charges against him and that he was capable of cooperating with his attorney if he had so chosen. The trial court was authorized to draw such a conclusion since it, as the trier of fact, is not bound by the opinion of an expert witness and may find an accused sane even without positive testimony as to sanity. *Moses v. State*, 245 Ga. 180, 181 (263 SE2d 916). Furthermore, "[a]pplications for new trial are in large part addressed to the sound discretion of the trial court. [Cit.]" *Allanson v. State*, 158 Ga. App. 77, 78 (279 SE2d 316).

Accordingly, after a review of the evidence adduced at the hearing, and especially in light of Dr. Bosch's equivocal testimony, we find no abuse of discretion on the part of the trial court in the present case. Since the newly discovered evidence was not so material as to demand a different verdict, appellant's extraordinary motion for new trial was properly denied by the trial court.

2. Appellant's final enumeration of error involves the trial court's denial of his motion to suppress evidence seized in his motel room at the time of his arrest. The evidence at trial revealed that on the morning of November 6, 1981, a man with a gun approached the head teller of the Garden City branch of the Trust Company Bank and demanded that she fill a paper bag with money. She complied with the gunman's request, but she was also able to put a dye bomb in the bag along with the money. The robber then fled. When the Garden City Police answered the bank's alarm, the branch manager gave them a description of the man and pointed the officer in the direction he had escaped. The officers then encountered a man who had been in foot pursuit of the robber. He gave the same description of the man as the one that had been given by the bank manager. The officers were in the process of sealing off the immediate area when they received a report that the owner of a nearby motel had seen a man fitting the description of the bank robber go into one of the rooms at

the motel. The police officers went to the room specified by the owner, knocked on the door, and identified themselves. A man who fit the description of the bank robber, and who was later identified as appellant, opened the door. He had stains on his clothes that appeared to be red dye, and his room was engulfed in tear gas fumes. An officer put appellant against a wall, frisked him, and read him his Miranda rights. After an inquiry by the arresting officer, appellant told him that the money was in a trash can in the bathroom and that the gun was in a briefcase under the bed.

Appellant claims that his arrest was illegal since it was effected without a warrant and that, as a result, the money and the gun were illegally seized. Appellant further contends that, even if the arrest itself was legal, the evidence was still illegally seized because it was not within appellant's "immediate presence." See OCGA § 17-5-1.

We hold that the arrest of appellant was legal since probable cause for his arrest obviously existed after the police officers observed the red dye on appellant, the tear gas fumes in his room, and appellant's resemblance to all of the descriptions given of the robber. *Starr v. State*, 159 Ga. App. 386, 388 (283 SE2d 630). Furthermore, there likely would have been a "failure of justice as a matter of law" had the arresting officer delayed the arrest until a warrant could have been obtained. *Durden v. State*, 250 Ga. 325 (1) (297 SE2d 237). The facts of this case involved such "exigent circumstances" as to authorize appellant's arrest without a warrant. Warden v. Hayden, 387 U. S. 294, 298 (87 SC 1642, 18 LE2d 782).

As stated above, after appellant was given his Miranda rights, he voluntarily disclosed the location of the money and the gun. Therefore, the seizure of the evidence was legal since it was consented to by appellant. *Abrams v. State*, 223 Ga. 216 (4) (154 SE2d 443). It follows that the trial court properly denied appellant's motion to suppress.

*Judgment affirmed. McMurray, C. J., and Birdsong, J., concur.*

DECIDED FEBRUARY 8, 1984 —
REHEARING DENIED FEBRUARY 28, 1984 —

*Adam P. Cerbone*, for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney*, for appellee.