A97A0458. MORRIS v. THE STATE.
(488 SE2d 685)

RUFFIN, Judge.

Jimmy Morris was indicted on two counts of child molestation. Count 1 charged Morris with "fondling the vagina" of the victim, V. D., who was 11 years old at the time of trial. Count 2 charged Morris with engaging in sexual intercourse with V. D. A jury found Morris guilty on Count 1 and not guilty on Count 2. Morris now appeals his conviction, and we affirm.

The record shows the following. V. D. testified that Morris, her mother's boyfriend, told her that he "wanted to teach [her] about sex" and started touching her "bikini areas" with his hands. V. D. further testified that Morris touched her vagina with his fingers and subsequently had sexual intercourse with her. According to V. D., these incidents began when she was ten years old.

Officer Robbie Pitts testified that during his investigation of the allegations, he interviewed and took statements from both Morris and V. D. In Morris' statement, which was read to the jury, Morris revealed the following: "I have run my fingers through [V. D.'s] vagina only a couple of times. She was very moist and horny. I did this because she guided my hand between her legs; I really didn't want to do it. . . . I just know that she acts like she wants to have sex with me, and she is constantly caressing me on my penis and guiding my hand through her vagina. I try not to do this but I am a man and [V. D.] knows how to push my buttons sexually." V. D. indicated in her statement, which also was read to the jury, that "Jimmy Morris has had sexual intercourse with me several times. . . . When I say sexual intercourse, I mean that he stuck his penis in my vagina."

At trial, Morris denied that he ever had, or attempted to have, sexual intercourse with V. D. Morris further testified that "[a]s far as fondling her, I mean, she would catch me off guard and grab my hand and lead it." He also admitted telling Officer Pitts that V. D. guided his hand through her vagina.

The jury found Morris guilty of fondling V. D.'s vagina, but not guilty of having sexual intercourse with her. Morris moved for a new trial, which the trial court denied. This appeal followed.

1. Morris claims that the trial court erred in denying his motion for directed verdict of acquittal as to both counts. "A motion for

directed verdict in a criminal case should only be granted where there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law. If there is any evidence of guilt, it is for the jury to decide whether that evidence, circumstantial though it may be, is sufficient to warrant a conviction." (Citations and punctuation omitted.) *Williams v. State*, 195 Ga. App. 476, 480 (4) (394 SE2d 123) (1990).

As to Count 1, V. D. testified that Morris touched her vagina with his fingers. The evidence also showed that Morris told police he touched V. D.'s vagina, although he claimed she "guided" his hand. At trial, Morris similarly did not deny touching V. D. Instead, he testified that V. D. "grab[bed] [his] hand and [led] it." In light of this evidence, the trial court properly denied Morris' motion and submitted Count 1 to the jury. Id.

Morris further argues that the trial court erred in denying his motion for directed verdict on Count 2 because the State presented insufficient evidence of venue. The jury, however, found Morris not guilty on Count 2. Even if Morris could show that the trial court erroneously denied his motion on this count, that error would be harmless. *Campbell v. State*, 207 Ga. App. 902, 907 (9) (429 SE2d 538) (1993).

2. Morris alleges that the trial court erred in denying his motion for new trial because he was "mentally incompetent and incapable of requesting counsel" before trial. Morris further argues that his appointed trial counsel was ineffective. We note that this enumeration fails to comply with the requirement that each error be enumerated separately. *Ramsay v. State*, 220 Ga. App. 618, 623 (4) (469 SE2d 814) (1996); OCGA § 5-6-40. Nevertheless, we will address the apparently unrelated allegations included within this single enumeration. *Ramsay*, supra.

The record shows that prior to trial, Morris was not represented by counsel and planned to defend himself. At arraignment, the trial court informed Morris that the charges against him were serious and advised him to either apply for a court-appointed lawyer or hire counsel. Morris responded: "Yes, sir. I was going to — later on if I could get my bond reset, I was going to get a lawyer that's out of Tallahassee that's licensed to practice law here in Georgia." On the day of trial, however, Morris again appeared without counsel. The trial court asked whether Morris desired an attorney, and Morris responded that he "would like one present with [him]. . . ." Counsel was then appointed to assist Morris with his case.

The record further shows that Morris raised no competency issues at trial. At the new trial hearing, however, he presented evidence that he has suffered from a "bipolar disorder manic with psychotic features" since 1989. Therapist George Greer testified that

he met with Morris once a week after his indictment but before trial. Greer indicated that Morris was "not doing well at that time" and explained that he was "hypermanic, grandiose, [and had] very poor judgment, [and] very poor insight. . . . I advised him that he needed to seek counsel, that he needed a lot of help with this case, but it just did not reach him. He was thinking that it's not all really that bad and I can handle it." According to Greer, Morris was not competent to make decisions for his defense or to stand trial.

(a) " 'The decision to grant a new trial is one within the sound discretion of the trial judge and his decision will not be reversed unless there is an abuse of discretion.' [Cit.]" *Everett v. State*, 253 Ga. 359, 361 (3) (320 SE2d 535) (1984). For the following reasons, we find no abuse in the trial court's decision rejecting Morris' claim that his mental incompetency and inability to request counsel mandated a new trial.

(i) At the new trial hearing, Morris argued that his condition rendered him "unable to make decisions such as whether or not he should have had counsel appointed. . . ." The record shows, however, that Morris ultimately recognized his difficult situation and asked for appointed counsel at trial. Although Morris continued to participate directly in the trial and even questioned one witness, appointed counsel assisted him by striking the jury, making opening and closing statements, questioning witnesses, raising objections, and moving for a directed verdict. The trial court exercised its discretion in concluding that Morris was able to make decisions regarding counsel, and thus was not entitled to a new trial on this ground.

(ii) We further find that the trial court acted within its discretion in rejecting Morris' competency argument. " '(T)he issue of mental competency to stand trial is the same whether raised before, during or subsequent to trial, and if, in fact, [Morris] was not competent at the time of his trial but is now competent to stand trial, a new trial should be granted.' [Cit.]" *Levitt v. State*, 170 Ga. App. 32 (1) (316 SE2d 6) (1984). Mental competency "relates only to the ability of [Morris], *at the time of the trial*, to intelligently participate in his trial. The issue is . . . whether [Morris] is capable at the time of the trial of understanding the nature and object of the proceedings going on against him and rightly comprehends his own condition in reference to such proceedings, and is capable of rendering his attorneys such assistance as a proper defense to the indictment preferred against him demands." (Citations and punctuation omitted; emphasis in original.) *Morrow v. State*, 162 Ga. App. 183, 184 (2) (290 SE2d 137) (1982).

At the new trial hearing, Morris' therapist testified that Morris was not competent "to make decisions for his defense and to stand trial." Morris' mother also testified to her belief that Morris was not

able to understand the trial proceedings. In addition to the evidence presented at the new trial hearing, however, the trial judge was authorized to consider the overall trial proceedings in determining Morris' competency at the time of trial. See *Smalls v. State*, 153 Ga. App. 254, 257 (1) (265 SE2d 83) (1980).

The record shows that at arraignment, Morris answered questions cogently, indicated his understanding that the charges against him were serious, and stated that he planned to retain a lawyer. When he subsequently appeared at trial without counsel, he requested that an attorney be appointed to help him defend against the charges. During the trial, Morris examined one witness himself. The transcript reveals that he posed clear questions to this witness, followed trial court rulings on objections, and conferred with appointed counsel for assistance when necessary. Morris also testified on his own behalf, answering questions on both direct and cross-examination and explaining his actions with respect to V. D.

We find that, based on its observation of the trial and the evidence presented at the new trial hearing, the trial court was authorized to conclude that Morris adequately understood the nature of the charges against him, comprehended his own condition with respect to the proceedings, and was capable of aiding in his defense. *Levitt*, supra at 34. " 'Both statute and common law grant the trial judge inherent authority to satisfy himself that the accused has (in this case, had) mental capacity to go to trial.' [Cit.] The trial judge here exercised that authority, and we find no reason to disturb his ruling." *Smalls*, supra at 257 (1).

In addition, we find no evidence that the trial court was under any duty to conduct a competency hearing during trial. " '(C)onstitutional guarantees require the trial court to inquire into competency, even where state procedures for raising competency are not followed, if evidence of incompetence comes to the court's attention.' [Cit.]" *Thaxton v. State*, 260 Ga. 141, 143 (4) (390 SE2d 841) (1990). Morris has not cited, and we have not located, any evidence that his alleged incompetence came to the court's attention during trial or that his actions at trial required such an inquiry. Id.

(b) Morris also argues that the trial court erroneously denied him a new trial on ineffective assistance of counsel grounds. According to Morris, trial counsel was ineffective for failing to request a competency hearing or psychiatric evaluation for him at trial. We disagree.

"To establish a claim of ineffective assistance of counsel, [Morris] must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. *Strickland v. Washington*, 466 U. S.

668 (104 SC 2052, 80 LE2d 674) (1984). [Morris] must establish both the performance and the prejudice components of the *Strickland* test." *Johnson v. State*, 222 Ga. App. 722, 728 (9) (475 SE2d 918) (1996). Absent clear error, we will affirm the trial court's finding that Morris received effective assistance of trial counsel. Id.

Trial counsel was appointed to assist Morris on the day of trial. We find no evidence that anything occurred during trial which should have raised doubt in trial counsel's mind regarding Morris' competency. The record presents no evidence that trial counsel knew about Morris' mental disorder, and Morris' mother testified at the new trial hearing that she never raised the issue of her son's competency with trial counsel. Furthermore, trial counsel was not called to testify at the new trial hearing regarding his interaction with or perceptions of Morris at trial.

In short, Morris has not shown that trial counsel had any reason to request a competency hearing or psychiatric evaluation. The trial court properly rejected Morris' ineffective assistance of counsel claim. See *Ricks v. State*, 240 Ga. 853, 855 (1) (242 SE2d 604) (1978).

3. Morris argues that the trial court erred in not granting a mistrial following a prejudicial, nonresponsive answer from Officer Pitts during cross-examination. We disagree.

On cross-examination, defense counsel asked Officer Pitts who was present when Pitts interviewed Morris during the investigation. Officer Pitts responded: "It was fourteen days after the first interview [with Morris]. And it was myself and [Investigator] Matt Littleton there. And the reason this statement — I took this statement. I was the primary in this interview. Reason is, because I had worked several — I've been involved with several child molestations, several child molestation accusations, and I took the lead on this interview and I was the primary. Investigator Littleton was there to — [.]"

Immediately after this response, defense counsel objected and moved for a mistrial, claiming that Officer Pitts' answer improperly suggested prior sexual misconduct by Morris. The State argued that defense counsel could cure any false impression created by the response through further questioning of Officer Pitts, without any special instructions to the jury or a mistrial. Defense counsel agreed. The trial court permitted the additional questions and told defense counsel that "if you want me to then advise the jury that there was no suggestion of any sexual misconduct, prior complaints against this defendant, then let me know and I'll do that." The transcript reveals no subsequent request for a curative instruction or renewed motion for mistrial.

" '(A) litigant cannot submit to a ruling, acquiesce in the ruling, and still complain of same. He is required to stand his ground and fight in order to successfully enumerate as error an (alleged) errone-

ous ruling by the trial judge. Acquiescence completely deprives him of the right to complain further; he has agreed that the trial court's ruling was correct by submitting to it. (Cit.)' [Cit.]" *Sanders v. State*, 181 Ga. App. 117, 120 (2) (351 SE2d 666) (1986). In this case, defense counsel *agreed* that no mistrial was necessary and that any false impressions could be erased through witness testimony. Counsel did not ask for curative instructions or renew his motion for mistrial. This enumeration of error has no merit.

4. Finally, Morris argues that the trial court improperly instructed the jury "that it should not base it's [sic] verdict on sworn testimony."[1] We find no error.

A review of the *entire* charge at issue reveals that Morris' complaint revolves around a "slip of the tongue" that the trial court corrected immediately. The trial court stated: "Members of the jury, you are not to base your verdict upon the sworn testimony — excuse me. Members of the jury, you are to base your verdict upon the sworn testimony and evidence which is introduced and admitted by the Court for your consideration." The trial judge immediately recognized his mistake and corrected himself by repeating the charge in its proper form. "The 'palpable' slip of the tongue could not have 'misled or confused the jury.' [Cit.] There was no reversible error." *Taylor v. State*, 261 Ga. 287, 297 (15) (404 SE2d 255) (1991).

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED MAY 22, 1997.

 Before Judge Altman.

*Kirbo, McCalley & Forehand, David S. Herndon*, for appellant.

*H. Lamar Cole, District Attorney, Charles M. Stines, Assistant District Attorney*, for appellee.

---

[1] We note that, with respect to this argument, Morris' brief violates Court of Appeals Rule 27 (c) (1). The argument does not follow the order of the enumerations of error, as required, and is not numbered properly in the brief.