A04A1817. HILL v. THE STATE.
(609 SE2d 654)

BARNES, Judge.

A jury convicted David Hill of three counts of armed robbery and one count of simple battery, and the trial court sentenced him to concurrent sentences of fifteen years for each felony and twelve months for the misdemeanor. He appeals, arguing that the trial court erred by excluding his proffered evidence that a nearly identical armed robbery occurred at the same location, two weeks earlier, while Hill was in Arkansas. While we agree with the defendant that having the name of a specific individual is not a litmus test for allowing evidence of a "reverse similar transaction," for the reasons that follow, we affirm the convictions.

We review a trial court's ruling of evidentiary issues for abuse of discretion. *Agony v. State*, 226 Ga. App. 330, 332 (3) (486 SE2d 625) (1997). We also view the evidence presented at trial "in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this court determines evidence

sufficiency, and does not weigh the evidence or determine witness credibility." *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997). Viewed in the light most favorable to the verdict, the evidence showed that around 6:30 a.m. in August 2002, a man in a black ski mask, gloves, pants, and shirt, with a black backpack and a gun, robbed the cash register and several customers at a Waffle House in DeKalb County. The robber took a pair of bolt cutters from his backpack, cut open the lock on the drop box, and placed the drop box money into his backpack. Shortly after the robber left the store, the restaurant supervisor drove up, and when the cook told him that they had been robbed, the supervisor saw the robber running from the building.

The supervisor testified that the restaurant had been robbed two weeks earlier, that he had lost most of his staff afterward, and that he "didn't want this guy to just run off." He called 911 from his cell phone, but the operator placed him on hold, so he chased the robber across the street and into an apartment complex, trailing by 15 to 20 yards but never losing sight of him. He saw the robber run behind some bushes, and then saw his head bobbing up and down for three or four minutes while the supervisor waited on hold with 911 again. When the robber began running away again, the supervisor saw that he had changed clothes and began chasing him again, zigzagging around the apartment buildings while a third call to 911 resulted in another hold. The supervisor finally jumped on the robber and knocked him down, struggling to grab a set of keys and an identification card from the robber's hands. After ten or fifteen minutes of struggling, the robber bit him on the hand. The supervisor told him to just give up the money and he could go, but when the robber reached for the backpack, the supervisor feared he would get shot and the two men began struggling again. Finally, the supervisor managed to throw the backpack about ten feet away, and the robber began to run away.

At that moment, two patrol cars with two police officers pulled into the parking lot where the men were, drew their weapons and took the robber into custody. The supervisor identified Hill as the man he was fighting with whom the officers arrested. He also testified that he had never lost sight of Hill during the chase from the Waffle House and that no one else was around during the incident.

The police officers retrieved from the ground a black ski mask, black gloves, and the backpack that Hill had been holding. Inside the backpack were a BB gun, bolt cutters, a black sweatshirt, pants, and do-rag, a Waffle House apron, ashtray, and ticket book, a window cleaning receipt made out to Waffle House, a knife, and cash.

Hill's defense was that he had fallen asleep in his car, in the apartment complex parking lot, after following someone there to sell him drugs. When he woke up around 6:00 a.m., he got out and walked

around looking for his customers. A man ran past him and when Hill approached, the man tossed the backpack and ran away. Hill said the supervisor approached and grabbed him, and they began fighting. He said he did not give the money to the supervisor because he was not the man who had dropped the backpack.

Hill sought at trial to offer evidence regarding a very similar robbery at the same Waffle House two weeks before this one, as a "reverse similar transaction." The trial court ruled the evidence inadmissible but allowed Hill to proffer his evidence outside the presence of the jury. The proffered evidence showed that the previous robber wore black pants, shirt, mask, and gloves, had a gun, and took money from the register and everyone present. He made everyone present sit down, as did the later robber. The first robber tried to open the store's drop box, to which no one present had a key. First, he asked for bolt cutters, which no one had; then he tried to break the lock. The cook, who was present at both robberies, testified that she thought the two robbers were different men, because she thought one man was smaller and had a different voice, but she also testified that she thought they were connected, because the second robber knew to bring bolt cutters.

Hill also proffered the testimony of his uncle, who testified that Hill's mother and sister had been injured in Arkansas in July, and that Hill was in Arkansas a few days before the first robbery occurred. He took Hill to the bus station to return to Atlanta one evening, although he was not certain as to the date. Finally, Hill testified that he left Arkansas by bus to Atlanta on July 21, which was the day of the first Waffle House robbery, and submitted into evidence his receipt for the tickets there and back.

The trial court held that evidence about the earlier robbery was not admissible because Hill did not have the specific name of the person who committed the other crime. On appeal, Hill contends that the trial court erred in this ruling, arguing that Georgia law does not require that a defendant show that a specific individual committed a "reverse similar transaction" crime, that the transactions were sufficiently similar to be admissible; and that the failure to admit the proffered evidence constituted harmful error. The State responds that the evidence was properly excluded because evidence that someone else robbed the restaurant two weeks earlier was not relevant to whether Hill robbed it the second time.

If the State wants to admit evidence that a defendant committed a similar transaction, it must present some evidence establishing that the independent crime was committed by the defendant, and the independent crime and the offense charged must be sufficiently similar or connected "so that proof of the former tends to prove the latter." *Harris v. State*, 222 Ga. App. 52, 54 (2) (a) (473 SE2d 232)

(1996). While similarity is an important factor, it is not the only factor. "The ultimate issue for admissibility is whether the evidence of other crimes has relevance to the issues in the trial of the case at bar." Id.

Our Supreme Court affirmed a trial court's decision in a murder case to exclude a defendant's evidence of the solicitation and commission of other contemporaneous murders in the area. *Palmer v. State*, 274 Ga. 796, 797 (3) (560 SE2d 11) (2002). The court held:

> While a defendant is entitled to show that another person committed the charged crime, the proffered evidence must also raise a reasonable inference of the defendant's own innocence. [This defendant's] proffer did not support an inference of misidentification, because it failed to show that the perpetrators of the extraneous crimes also committed the [crimes] for which he was charged. Thus, the trial court properly excluded the irrelevant evidence.

(Citations omitted.) Id. Similarly, this court affirmed a trial court's decision to exclude evidence of subsequent crimes committed while a defendant was incarcerated, holding that:

> Nothing in the proffer that was made by appellant, however, would indicate that the perpetrator of the subsequent "similar" offense was also the perpetrator of those crimes for which appellant was being tried and that appellant had been misidentified by the victims. Compare *Holt v. United States*, 342 F2d 163 (5th Cir. 1965). The most that appellant's proffer showed was that, subsequent to the commission of the crimes for which he was to be tried, someone, who bore no close physical resemblance to him, had employed a similar modus operandi in the commission of a crime. Evidence merely that a subsequent "copy cat" crime had been committed by someone else would not cast doubt upon the credibility of the identification of appellant that had been made by the victims of those crimes for which appellant was being tried. Since the excluded testimony was neither relevant nor material to appellant's guilt or innocence, the trial court did not err in excluding it.

*Burton v. State*, 191 Ga. App. 822 (2) (383 SE2d 187) (1989).

In this case, the cook was present during both robberies. She testified that the first robber was smaller than the second robber, and that the two men had different voices. She thought that the two robberies were connected in some way, such as perhaps the first robber told the second robber to bring bolt cutters, but she did not

think they were the same person. The "reverse similar transaction" evidence was properly excluded, not because the first robber remained unidentified, but because, as in *Palmer* and *Burton*, Hill's evidence failed to show that the person who committed the second robbery was the same person who committed the first robbery.

Accordingly, the trial court did not err in excluding Hill's proffered evidence.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED JANUARY 10, 2005 —
RECONSIDERATION DENIED JANUARY 27, 2005 — 

*Gerard B. Kleinrock*, for appellant.

*Jeffrey H. Brickman, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.

