## A06A1419. SCOTT v. THE STATE.
(635 SE2d 582)

BARNES, Judge.

Gregory Scott (Scott) appeals his conviction for rape. Scott contends that the trial court erred by permitting an expert witness to give improper hearsay testimony, by giving an *Allen* charge containing improper language which had a coercive and prohibited effect on the jury, and by denying his motion for a directed verdict of acquittal when the evidence presented at trial was insufficient to support his

---

conviction for rape. Scott also contends that his trial counsel was ineffective. After Scott's motion for a new trial was denied, he filed this appeal. Finding no reversible error, we affirm.

This is the second appeal of this case. Following Scott's conviction, the trial court held a sentencing hearing and sentenced Scott to twenty years, to serve ten in prison. The State appealed, and this court reversed the sentence and remanded for imposition of a mandatory life sentence. *State v. Scott*, 265 Ga. App. 387 (593 SE2d 923) (2004). Because of Scott's two prior felonies, OCGA § 17-10-7 (a) requires that he be given the maximum sentence for rape, and the trial court had no discretion to probate or suspend any part of it. On remittitur, the trial court resentenced Scott to life in prison.

1. Scott argues that the evidence presented at trial was insufficient to support his conviction for rape under OCGA § 16-6-1,[1] because the prosecution did not come forward with evidence by which a reasonable jury could conclude beyond a reasonable doubt that Scott had carnal knowledge of the victim. Scott contends that there was not sufficient evidence to support a reasonable conclusion that Scott's sexual organ penetrated the victim's sexual organ.

On appeal from a criminal conviction, this court views the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. *Williams v. State*, 261 Ga. App. 793, 794 (1) (584 SE2d 64) (2003). This court neither weighs the evidence nor judges the credibility of witnesses, but only determines whether the evidence presented at trial was sufficient for a rational trier of fact to find the defendant guilty of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The victim called the police to the residence of Brent Scott (B. Scott), where she resided and where Scott stayed the night before. B. Scott is the victim's uncle and Scott's father. When the police arrived, the victim accused Scott of raping her, and the police arrested Scott. A female deputy sheriff interviewed the victim and took her to Sumter Regional Hospital where Dr. Ben Andrews examined her.

The jury heard testimony from the victim, B. Scott, Dr. Andrews, the deputy sheriff who interviewed the victim and took her to the hospital, and another deputy sheriff who investigated the case. B. Scott testified that the victim, his niece, began living with him and his wife when she was 12 years old, and that the victim was now 43 years old. Since B. Scott's wife died in 1994, the victim kept house for him.

---

[1] "A person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will; . . . Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ."

The victim did not work and was unable to drive. The day before the incident, B. Scott told Scott that he could stay at the house as long as he did not "mess with" the victim.[2]

The victim testified that during the morning hours, after B. Scott left for work, Scott forced her off of the couch she was sitting on and into another room, and then raped her. The victim stated that Scott put his hands under her shirt and brassiere, and forced her off of the couch after she told him that she did not want to go anywhere. She said that after he pushed her into the other room, Scott forced her clothes off and penetrated her sexual organ with his sexual organ, although she asked him not to. Afterward, she hid in the bathroom and used a cordless telephone to call the police.

The victim testified that she did not have any bruises or bleeding but that her private parts burned after the incident. At trial, the victim was not able to describe either the male or the female sex organs, but stated that Scott "did his business" with his "male counterpart," and that it hurt. The victim testified that Scott did not have sex with her, but that he raped her, and that she did not consent to what happened.

The court declared Dr. Andrews an expert in emergency medicine, and allowed him to testify as to what the victim told him, because this testimony was a basis for conclusions that he was allowed to draw as an expert. Dr. Andrews testified that he examined the victim after she told him that her cousin raped her, and that she had some discomfort in her vaginal area. The victim indicated to Dr. Andrews that her assailant put his penis inside her vagina, although she did not use those words. Dr. Andrews stated that after a physical examination, he could not determine whether or not someone had sex with the victim, but that there were some secretions outside her vaginal area that could have been semen. He testified that although he could not confirm that someone raped or had sex with the victim, he had no reason to doubt her version of the events.

The deputy sheriff who investigated this case testified that when he arrived at B. Scott's house, the victim said that she had been raped. The deputy sheriff who interviewed the victim and took her to the hospital testified that when she arrived at B. Scott's house, the victim was at the back door, pointing to Scott and yelling that he raped her. The deputy stated that the victim was very upset, and that she was yelling, screaming, and "having a fit." The deputy also testified that when she took the victim inside B. Scott's house to talk to her, the victim was crying and kept repeating "he raped me."

---

[2] At Scott's sentencing hearing, his brother and sister-in-law testified that both Scott and the victim were mentally challenged.

"The testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-4-8. "The credibility of a witness is a matter to be determined by the jury under proper instructions from the court." OCGA § 24-9-80. The victim testified at trial that Scott's sexual organ penetrated her sexual organ after she told Scott to stop, and there was no evidence presented that directly contradicted this statement. The jury had the right to accept the victim's testimony depicting nonconsensual, forcible intercourse, as satisfying the requirements of OCGA § 16-6-1. *Johnson v. State*, 245 Ga. App. 690, 691 (538 SE2d 766) (2000). We do not disturb the jury's guilty verdict, because evidence presented at trial was sufficient to justify a rational trier of fact of the existence of the essential elements of rape, and thus find guilt beyond a reasonable doubt. See *Jackson*, supra, 443 U. S. 307.

2. Scott argues that the trial court erred by permitting Dr. Andrews to repeat hearsay testimony that he did not rely on to form an expert opinion. We review the trial court's decision to allow an expert to testify as to hearsay statements for abuse of discretion. See *Hill v. State*, 271 Ga. App. 431 (609 SE2d 654) (2005). "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence." OCGA § 24-3-4. The trial court declared Dr. Andrews an expert witness and properly instructed the jury that, as an expert in emergency medicine, Dr. Andrews could testify about what the victim told him. At trial, the defense made no objections to Dr. Andrews' testimony.

"[M]edical opinions concerning a patient's physical condition are admissible in evidence even when they are based in part on the physical history elicited from the patient." (Citation omitted.) *State v. Butler*, 256 Ga. 448, 449-450 (1) (349 SE2d 684) (1986). "An expert may give an opinion based upon his own examination, upon his observation, or upon any state of facts, supported by some evidence in the case, which he assumes as true." (Citation, punctuation and emphasis omitted.) *Leonard v. State*, 269 Ga. 867, 870 (3) (506 SE2d 853) (1998).

Unlike the experts in the cases upon which Scott relies, Dr. Andrews testified from his personal knowledge.[3] Dr. Andrews himself examined the victim in the emergency room and testified concerning his medical findings from his examination. Dr. Andrews' testimony

---

[3] In *Leonard*, supra, 269 Ga. App. at 871, the expert "did not have any personal knowledge of either the conducting of the DNA tests or the results."

also did not violate the rule that a testifying expert may not serve as a conduit for the opinions of others. See *Leonard*, supra, 269 Ga. App. at 871; *Doctors Hosp. of Augusta v. Bonner*, 195 Ga. App. 152, 159 (3) (392 SE2d 897) (1990). Unlike in *Leonard* and *Bonner*, the victim herself stated the same information at trial which Dr. Andrews testified that she told him when he examined her.

Scott contends that the jury found him guilty because Dr. Andrews' testimony bolstered the victim's credibility to the jury. "[A] witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth." (Citation and punctuation omitted.) *Patterson v. State*, 278 Ga. App. 168, 170 (628 SE2d 618) (2006). Dr. Andrews did not testify concerning the victim's credibility, but merely repeated the information that the victim told him in the emergency room, which he used to examine her and draw medical conclusions. He stated that he found some secretions outside the victim's vaginal area, but that he was not able to conclude definitely whether or not someone raped the victim. Dr. Andrews' testimony was within the guidelines of permissible testimony by an expert witness, and therefore, the trial court did not err in allowing it into evidence.

3. Scott argues that the trial court erred in giving an *Allen* charge which contained language that had a coercive and prohibited effect on the jury. After the close of evidence and jury instructions, the jury deliberated for about three hours before alerting the court that it was deadlocked nine to three. Despite objections from the defense, the judge gave the jury an *Allen* charge, instructing it that the case must be decided by some jury and urging it to resume further deliberations. The jury returned with a guilty verdict less than an hour later, and the judge polled the jury at the defense's request. Two jurors stated that the guilty verdict was their verdict when deliberations ended, but was not their verdict at first.

The *Allen* charge in Scott's case contained language which our Supreme Court held should no longer be included in *Allen* charges given in this State, which is that the case "must be decided by some jury." *Burchette v. State*, 278 Ga. 1, 3 (596 SE2d 162) (2004). However, Scott's trial was held on January 6 and 7, 2003, before the decision in *Burchette* on May 3, 2004. After its decision in *Burchette*, our Supreme Court held in *Widner v. State*, 280 Ga. 675 (631 SE2d 675) (2006), that *Burchette* is prospective in its application and does not control cases tried before May 3, 2004. Therefore, the language that the trial court used in its *Allen* charge was not prohibited at the time of Scott's trial, and it was not error for the trial court to have used it.

In regard to the *Allen* charge itself, the issue on appellate review is "whether the instruction is so coercive as to cause a juror to abandon an honest conviction for reasons other than those based

upon the trial or the arguments of other jurors." (Punctuation omitted.) *Burchette*, supra, 278 Ga. at 3, quoting *Mayfield v. State*, 276 Ga. 324, 330 (2) (578 SE2d 438) (2003). In *Burchette*, supra, 278 Ga. at 3, *Mayfield*, 276 Ga. at 331, and other cases, this court and our Supreme Court held that because the "must-be-decided" language constituted but one small portion of an otherwise balanced and fair *Allen* charge, it did not render the charge impermissibly coercive. See *Widner*, supra, 280 Ga. at 677; *Burge v. State*, 273 Ga. App. 38 (614 SE2d 158) (2005); *Drogan v. State*, 272 Ga. App. 645 (613 SE2d 195) (2005); *Nowill v. State*, 271 Ga. App. 254, 258 (3) (609 SE2d 188) (2005); *Clark v. State*, 271 Ga. App. 534, 538 (4) (610 SE2d 165) (2005).

The record in Scott's case shows that the trial judge's *Allen* charge was fair and balanced, and contained language that our Supreme Court held not to be coercive in *Mayfield*, supra, 276 Ga. at 331. The charge in this case, and in *Mayfield*, cautioned the jurors that the verdict was not to be "mere acquiescence of the jurors in order to reach an agreement," that any difference of opinion should cause the jurors to "scrutinize the evidence more closely," and that the aim was to keep the truth in view as it appeared from the evidence, considered in light of the court's instructions. See id. At Scott's trial, "the judge, though firm in admonishing the importance of juries making verdicts, was careful not to intimate or express any opinion as to the propriety of any particular verdict, nor did he make any suggestion tending to coerce any particular group of jurors to agree with the others." (Citation and punctuation omitted.) *Widner v. State*, supra, 280 Ga. at 678 (3).

Scott contends that the *Allen* charge did in fact have a coercive effect on the jury because the jury deliberated for approximately three hours before receiving the *Allen* charge, but returned its verdict less than one hour after receiving the charge. In *Burchette*, our Supreme Court held that the length of time the jury deliberated before and after the giving of the *Allen* charge was merely one of the factors to consider in determining whether the charge was coercive. 278 Ga. at 3. See also *Drogan*, supra, 272 Ga. App. at 648; *Clark*, supra, 271 Ga. App. at 538. Moreover, in past cases we held that one hour was sufficient time for deliberations after an *Allen* charge. In *Smith v. State*, 275 Ga. App. 60, 65 (6) (619 SE2d 694) (2005), and *Graham v. State*, 273 Ga. App. 187, 189 (2) (614 SE2d 815) (2005), the jury deliberated for approximately an hour after receiving the *Allen* charge, and this court held that the charge was not coercive. Further, the trial in this case was short, lasting only one day, and there were few witnesses.

After the verdict in this case, the trial judge polled the jury, and each jury member confirmed his or her verdict. It is irrelevant that two of the jurors stated that guilty was not their initial verdict,

because these two jurors affirmed that this was in fact their verdict in the courtroom when the verdict was read. Under these circumstances, we hold that the *Allen* charge given in this case was not coercive or prohibited and does not provide grounds for reversal.

4. Scott argues that his trial counsel provided ineffective assistance. "In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo." *Washington v. State*, 276 Ga. 655, 658 (3) (581 SE2d 518) (2003). To prevail on an ineffectiveness of counsel claim, a defendant must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Barner v. State*, 276 Ga. 292, 294 (4) (578 SE2d 121) (2003), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of this test, the defendant must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment. Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case. Id. The second prong requires that the defendant show that there is a reasonable probability that, absent counsel's unprofessional errors, the result of the trial would have been different. Id.

(a) Scott contends that his trial counsel was ineffective because his attorney failed to call Scott's brother and sister-in-law to testify at trial that Scott and the victim were involved in a consensual relationship years ago. At Scott's sentencing hearing, his brother and sister-in-law testified that Scott and the victim, who were mentally challenged and had been in special classes together, had previously engaged in a consensual sexual relationship which was reported to DFACS as early as 1980. They said that the victim perhaps concocted the rape story after watching soap operas and because she was angry that Scott moved into her house. After sentencing, Scott moved for a new trial on the ground of ineffective assistance of counsel, because the trial defense counsel failed to call these witnesses to testify regarding the consensual relationship between Scott and the victim, or to raise the issue of the defendant's competency to stand trial. The court denied this motion. At Scott's hearing on his motion for a new trial, his trial counsel testified that she made a strategic decision not to call Scott's brother and sister-in-law to testify at trial, because she did not believe that they would add anything to the information that the other witnesses were already giving. "Trial strategy and tactics do not equate with ineffective assistance of counsel. The fact that [defendant] and his present counsel disagree with the decision made

by trial counsel does not require a finding that [defendant's] original representation was inadequate." (Punctuation and footnote omitted.) *Hines v. State*, 248 Ga. App. 752, 756 (3) (548 SE2d 642) (2001). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Osterhout v. State*, 266 Ga. App. 319, 323-324 (4) (596 SE2d 766) (2004).

"We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result." *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002). Scott relies on statements made by his brother and sister-in-law at his sentencing hearing. The fact that a relationship between two people was consensual at one time does not preclude a rape conviction when the relationship was no longer consensual. See *Tarver v. State*, 280 Ga. App. 89 (633 SE2d 415) (2006).[4] "Matters such as calling a particular witness, questioning on direct and cross-examination, making trial motions, and objecting to testimony are strategic and tactical decisions within the exclusive province of the attorney after consultation with the client." *Himmel v. State*, 246 Ga. App. 845, 848 (2) (542 SE2d 557) (2000). The decision not to call Scott's brother and sister-in-law as witnesses was strategic, and the trial court's decision to deny a new trial on this ground was not clearly erroneous.

(b) Scott also contends that his trial counsel failed to investigate whether he was competent to stand trial. At the hearing on Scott's motion for a new trial, he testified that at the time of his trial, there was a serious question of whether he was capable of understanding the nature of the proceedings or providing his attorney with assistance because he was taking strong medication for pain resulting from two major back surgeries. Scott stated that as a result of taking this medication he dozed off during trial and had trouble focusing. Scott also testified at the hearing that he has a mental disability that affected his ability to understand the nature of the proceedings and assist his attorney during trial.

"If a defendant wishes to claim ineffectiveness based on trial counsel's failure to request a psychiatric evaluation, it is not enough to show merely that counsel unreasonably failed to inquire into his mental state — he must show a likelihood that such an evaluation would have affected the outcome at trial." *Barber v. State*, 236 Ga.

---

[4] In *Tarver*, the victim and the defendant had an on-and-off relationship for several years and they sometimes had sexual relations. This court affirmed the defendant's rape conviction based on evidence that he forced himself on the victim despite her objections during the incident in question.

App. 294, 298 (4) (512 SE2d 48) (1999). "In addition to the evidence presented at the new trial hearing, . . . the trial judge [is] authorized to consider the overall trial proceedings in determining [the defendant's] competency at the time of trial." *Morris v. State*, 226 Ga. App. 535, 538 (2) (488 SE2d 685) (1997).

There is nothing in the trial record to indicate that an evaluation of Scott's mental state would have affected the outcome. Further, no evidence shows that anyone had to awaken Scott during his trial, or that he was ever asleep. At the hearing on Scott's motion for a new trial, Scott's trial counsel testified that Scott never indicated to her that he did not understand what was going on, or that he was under the influence of any medication. The trial counsel testified that Scott appeared to understand the communications that she had with him both before and during the trial. She stated that she did not explore the issue of a psychological evaluation of Scott because she did not see any need for it. Nothing in the trial record suggests that Scott was denied a fair trial because his counsel did not investigate his competency. See *Barber*, supra, 236 Ga. App. at 299.

Based on the evidence presented at Scott's trial, and at the hearing for Scott's motion for a new trial, the trial court did not abuse its discretion in concluding that Scott adequately understood the nature of the charges against him, comprehended his own condition with respect to the proceedings, and was capable of aiding in his defense. See *Morris*, supra, 226 Ga. App. at 538. The trial court did not err in denying Scott's motion for a new trial based on his claim of ineffective assistance.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED AUGUST 14, 2006.

*Leigh S. Schrope, Reese H. Davis*, for appellant.
*Cecilia M. Cooper, District Attorney, Robert H. Reeves, Assistant District Attorney*, for appellee.