## A07A1834. HAYGOOD v. THE STATE.
(656 SE2d 541)

MIKELL, Judge.

Following a jury trial, Samuel Jeffrey Haygood was found guilty of two counts of statutory rape and two counts of child molestation based on his contact with his stepdaughter. He appeals the denial of his motion for new trial, asserting that the trial court erred in failing

---

sua sponte to order a hearing on Haygood's competence to stand trial; and that his trial counsel's assistance was ineffective, first, in failing to request a mental health evaluation of Haygood and, second, in failing to object on Confrontation Clause grounds to DNA evidence admitted at trial. We find no error and affirm.

"On appeal of a conviction based on a jury verdict, this [C]ourt resolves all conflicts in favor of the verdict and examines the evidence in a light most favorable to support that verdict."[1] So viewing the evidence, the record reflects that at trial A. W., then 16 years old, testified that Haygood forced her to engage in sex with him beginning when she was 11; that she told her mother of his behavior but that her mother did not believe her; and that Haygood continued to force her to have sex with him. In March 2003, when A. W. was 14, she was found to be pregnant; she delivered twins, a boy and a girl, on September 20, 2003, when she was 15 years old. At trial, A. W. identified Haygood as the father of her twins. A. W.'s mother, Nancy Haygood, testified that her daughter told her in March 2002 of Haygood's behavior in forcing A. W. to engage in sex with him. The mother further testified that she did not believe her daughter's outcry at that time. The state also introduced DNA evidence indicating that Haygood was the father of A. W.'s twins.

At trial, Haygood denied having sexual intercourse with A. W. or touching her in any sexual manner. He stated that he and Nancy Haygood were married in November 1996 and were divorced in April 2001, but that he moved back in with Nancy in January 2002 because he was having heart trouble. Haygood further testified that he avoided sex because he feared a heart attack; that instead he masturbated into condoms, which he then discarded in the trash; and that his stepdaughter, A. W., must have obtained his semen from the discarded condoms in order to impregnate herself. When he was asked on cross-examination how A. W. figured out how to impregnate herself, he responded, "She has a computer. She has her internet. She has friends. She has friends all over the world."

At the sentencing hearing, the trial court heard testimony in mitigation from several witnesses on behalf of Haygood: his brother, Griffin Haygood; his employer and a co-worker at the substance abuse treatment center where Haygood had been employed; and his youngest sister, Reverend Pamela Samuel. None of these witnesses described any mental health problems Haygood may have had. The trial court noted on the record that prior to the sentencing hearing he had received a facsimile "signed the family" concerning Haygood's

---

[1] (Citations and footnotes omitted.) *Coalson v. State*, 251 Ga. App. 761, 762 (555 SE2d 128) (2001).

mental health history, but that the source was unknown, and that at no time had the court been made aware of any prior mental health problems indicating a need for a mental health evaluation of Haygood. Trial counsel stated at that time that he had no evidence to present on the issue of mental incompetency. The facsimile mentioned by the judge was not entered into evidence nor was it made a part of the record on appeal.

At the new trial hearing, Haygood testified that he was tested for "mental health issues" in 1988; that he received disability payments for "a mental health issue" for three years, starting in 1989 and ending when he obtained employment as a substance abuse counselor. On cross-examination, however, he testified that he sought psychiatric help in 1989, when he met once with a doctor who worked for "Social Security," and again in 2001, when he met twice with a psychiatrist employed at the same substance abuse treatment center where Haygood was employed; and that prior to the June 2005 trial he had been employed as a substance abuse counselor or supervisor for more than four years. Haygood further testified that he did not understand the nature of the proceedings at the time of trial, nor did he "comprehend [his] own condition" at that time; but that he never told his trial counsel or the trial judge that he did not understand the proceedings or that he had "mental health issues." Griffin Haygood testified that Haygood exhibited "unreasonable patterns of thought."

Haygood's trial counsel, an attorney with more than 12 years experience representing criminal defendants, also testified at the new trial hearing. Counsel testified that he was aware that Haygood had abused drugs "years before," but that he understood that Haygood had been employed for a long time as a substance abuse counselor; and that this employment had continued up to the time of trial. Counsel testified that he met with Haygood four or five times prior to trial, spending either five to six or ten to twelve hours with Haygood. Counsel testified further that he was able to communicate with Haygood; that Haygood responded to his questions appropriately; that Haygood never gave any indication or told counsel that he did not understand what was going on at trial; that based on counsel's observations and experience, Haygood did not demonstrate such a lack of understanding as would raise a question of incompetency; that before the verdict was rendered, counsel had been given no indication that Haygood had received treatment for mental illness; and that therefore counsel did not make inquiry or investigate Haygood's prior mental health. Counsel further testified that he did not discuss with Haygood the possibility of pursuing a plea of not guilty by reason of insanity or guilty but mentally ill, because this option "did not seem to be an issue to me," nor did he see the need for a mental evaluation in Haygood's case. Counsel testified that Haygood's testimony at trial

concerning how A. W. might have impregnated herself with his sperm seemed "medically unlikely" but "rational in a sense," and it did not prompt him to seek a mental evaluation for Haygood. Trial counsel further testified that after the end of the trial, and a day or two before the sentencing hearing, he first learned from Griffin Haygood that Haygood had had prior mental problems, but the information was not specific, nor did he receive any written documentation of the alleged mental illness; and therefore counsel did not believe it necessary to look into the mental health issue further.

1. Haygood contends that the trial court erred in failing sua sponte to conduct a hearing on his competency to stand trial. "An accused who lacks the mental capacity to understand the nature and object of the proceedings around him, to consult with counsel, and to assist in preparing his defense, may not constitutionally be subjected to trial."[2] The trial court is required to inquire into a defendant's competency sua sponte, however, "only when information becomes known to it, prior to or at the time of the trial, sufficient to raise a bona fide doubt regarding the defendant's competence":[3] that is, "information which, objectively considered, should reasonably have raised a doubt about the defendant's competency and alerted the trial court to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense."[4] In determining whether the trial court received such information, "an appellate court focuses on three factors: (1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor at trial; and (3) prior medical opinion regarding the defendant's competence to stand trial."[5] Because none of these factors are shown in the record before us, this enumeration of error fails.

The record does not show that Haygood engaged in any irrational behavior, either before or during the trial. Haygood points to his testimony at trial concerning his explanation for the paternity of the twins as being irrational. In light of trial counsel's testimony that counsel was able to communicate with Haygood; that Haygood responded to counsel's questions appropriately; that Haygood appreciated the seriousness of the charges against him; and that Haygood gave no indication that he did not understand the proceedings, we

---

[2] (Citations omitted.) *Biggs v. State*, 281 Ga. 627, 629 (3) (642 SE2d 74) (2007).

[3] (Citation and punctuation omitted.) Id. at 630 (3); accord *Traylor v. State*, 280 Ga. 400, 404 (4) (a) (627 SE2d 594) (2006).

[4] (Citations omitted.) *Traylor*, supra.

[5] (Citations omitted.) *Flesche v. State*, 254 Ga. App. 3, 4-5 (1) (561 SE2d 160) (2002), citing *Johnson v. State*, 209 Ga. App. 514, 516 (2) (433 SE2d 717) (1993).

conclude that neither this nor other behavior referenced by Haygood raised a "bona fide doubt" as to Haygood's competence.[6]

With regard to the second factor listed above, Haygood's demeanor at trial also gave no indication of incompetency. In determining Haygood's competency at time of trial, the trial court was authorized to consider not only the evidence presented at the new trial hearing, but also "the overall trial proceedings."[7] "As a first-hand observer of [Haygood]'s demeanor, the court was well positioned to determine the need for a psychiatric evaluation."[8] In ruling on Haygood's motion for new trial, the trial court specifically found that Haygood "did not exhibit incompetence from his demeanor at the trial." Our review of the record shows that this finding is not clearly erroneous. Thus, the second factor listed above is absent from this case.

As to the third factor, it is undisputed that the trial court had access to no medical opinion whatsoever indicating Haygood's incompetence, and certainly not to any *prior* medical opinion.[9] Griffin Haygood, Haygood's brother, testified at the new trial hearing that immediately prior to the sentencing hearing (but after the trial had ended), he sent to the trial court a facsimile of a "printout," allegedly from Social Security, having to do with his brother's mental health history. This document, as the trial court noted, was never entered into evidence nor is it a part of the record on appeal. Such a document "did not constitute information which, objectively considered, should reasonably have raised a doubt about [Haygood]'s competency."[10]

"Absent evidence in the record of [Haygood]'s incompetency, a court need not order such a hearing, as mental competency is otherwise presumed."[11] Nothing in the record before us rebuts the presumption that Haygood was competent at the time of trial and sentencing. Accordingly, the trial court did not err in failing to inquire

---

[6] See *Flesche*, supra at 5 (1) (irrational behavior was not shown where defendant was at times obstinate or uncooperative with counsel or gave varying versions of event).

[7] (Citation omitted.) *Morris v. State*, 226 Ga. App. 535, 538 (2) (a) (ii) (488 SE2d 685) (1997) (trial judge authorized to conclude that defendant was competent based on court's observation of trial, even where defendant's mother and therapist testified at new trial hearing that defendant was not competent). See also *Mitchell v. State*, 207 Ga. App. 306, 308 (3) (427 SE2d 814) (1993) (testimony of defendant's mother in mitigation at pre-sentencing hearing that defendant did not understand the proceedings did not raise reasonable doubt about defendant's competency, where trial court had just had opportunity at trial to observe defendant "behaving normally and cooperating with counsel in his defense").

[8] (Citations omitted.) *Flesche*, supra (defendant's "somewhat rambling but coherent testimony" and "vague answers" did not amount to demeanor requiring trial court to order competency evaluation sua sponte, where both trial court and trial counsel's observations indicated that defendant was competent).

[9] See id.

[10] *Mitchell*, supra.

[11] (Citations omitted.) *Flesche*, supra at 6 (1).

further into Haygood's competency sua sponte.[12]

2. Haygood contends that his trial counsel rendered ineffective assistance. In reviewing a claim of ineffective assistance of trial counsel, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[13] In order to prevail on such a claim, Haygood "must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense."[14] In order to show deficiency, Haygood "must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment."[15] "The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case."[16] In order to show prejudice, Haygood must establish that "a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[17] Moreover, "[t]he reviewing court need not address both components if [Haygood] makes an insufficient showing on one, nor must the components be addressed in any particular order."[18]

(a) Haygood asserts that trial counsel rendered ineffective assistance in failing to have him evaluated for mental illness and incompetence before trial or before sentencing. This claim fails both components of the *Strickland* test set forth above.

As to the deficiency component, "where a defense attorney has received information from a reliable source that his client has had a history of psychiatric problems, but failed to adequately investigate this history, counsel failed to provide effective assistance."[19] On the

---

[12] See *Lewis v. State*, 279 Ga. 69, 71 (3) (608 SE2d 602) (2005).

[13] (Citation and punctuation omitted.) *Carey v. State*, 281 Ga. App. 816, 818 (2) (637 SE2d 757) (2006).

[14] (Citation and footnote omitted.) *Vincent v. State*, 276 Ga. App. 415, 416 (2) (623 SE2d 255) (2005). See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

[15] (Citation omitted.) *Scott v. State*, 281 Ga. App. 106, 112 (4) (635 SE2d 582) (2006). Accord *Biggs*, supra at 631 (4).

[16] (Citation and punctuation omitted.) *Biggs*, supra.

[17] (Punctuation omitted.) *Mendoza v. State*, 274 Ga. App. 662, 664 (3) (618 SE2d 712) (2005), citing *Strickland*, supra at 694 (III) (B) (the Court explained that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome").

[18] (Citation and punctuation omitted.) *Fitzgerald v. State*, 279 Ga. App. 67, 70 (2) (630 SE2d 598) (2006). See *Strickland*, supra at 697 (IV).

[19] (Citation and punctuation omitted.) *Martin v. Barrett*, 279 Ga. 593, 594 (619 SE2d 656) (2005) (affirming habeas court's finding of deficient performance where counsel knew of defendant's recent hospitalization and treatment for mental illness, but failed to investigate due to inattention).

other hand, however, "[i]f trial counsel lacks notice of a prior psychiatric problem, . . . the failure to investigate a defendant's mental health does not necessarily constitute deficient performance."[20] In the case at bar, Haygood's trial counsel testified that he did not know of Haygood's alleged prior history of psychiatric problems; that Haygood appeared to understand the communications that counsel had with him; and that counsel did not explore the need for a psychological evaluation of Haygood because he did not see it as an issue. "Nothing in the trial record suggests that [Haygood] was denied a fair trial because his counsel did not investigate his competency."[21]

Even if counsel's performance were to be deemed deficient, however, Haygood has failed to show that this deficiency prejudiced the defense.

> If a defendant wishes to claim ineffectiveness based on trial counsel's failure to request a psychiatric evaluation, it is not enough to show merely that counsel unreasonably failed to inquire into his mental state — he must show a likelihood that such an evaluation would have affected the outcome at trial.[22]

As discussed in Division 1 above, considering the testimony of Haygood's trial attorney, the transcript of the trial, and the absence of any expert testimony as to Haygood's mental state, the trial court did not abuse its discretion in determining that Haygood was competent at the time of trial.[23] Thus, even if trial counsel had raised the issue of whether Haygood should be evaluated for mental problems, Haygood has failed to show that the outcome of the proceedings would have been otherwise.[24]

(b) Haygood asserts that trial counsel's performance was ineffective because counsel did not object to the state's DNA evidence on Confrontation Clause grounds. We disagree.

At trial, the state presented expert evidence of DNA tests showing a 99.99 percent probability that Haygood was the father of the twins born to A. W. Following a pretrial hearing on Haygood's motion

---

[20] (Citations omitted.) *Breland v. State*, 285 Ga. App. 251, 253 (2) (648 SE2d 389) (2007).

[21] (Citation omitted.) *Scott*, supra at 114 (4) (b) (counsel's assistance not ineffective where trial counsel did not pursue psychological evaluation of defendant because defendant never indicated lack of understanding of proceedings and appeared to understand counsel's communications with him).

[22] (Citation and punctuation omitted.) Id. at 113-114 (4) (b).

[23] See *Scott*, supra at 114 (4) (b); *Huzzie v. State*, 236 Ga. App. 192, 194 (2) (512 SE2d 5) (1999).

[24] See *Scott*, supra at 113 (4) (b).

in limine, this evidence was admitted through the testimony of Anthony Winston, associate technical director in the Forensic Identity Department of Laboratory Corporation of America ("LabCorp"). Winston was qualified at trial without objection as an expert in the area of DNA testing. Winston testified that he directly supervised Kelly Peagram, a LabCorp technologist, and that Peagram did the "bench work," generating the raw data that Winston then interpreted and testified about at trial. In order to generate this raw data, Peagram used a blood sample obtained from Haygood and buccal swabs (cotton swabs from the inside of the mouth) obtained from A. W. and the twins. Because Peagram herself did not testify at trial, defense counsel objected to the DNA evidence on hearsay grounds, both at the pretrial hearing on Haygood's motion in limine and also at the trial itself. Trial counsel did not, however, object to this evidence on Confrontation Clause grounds, and Haygood asserts that this omission rendered counsel's assistance ineffective.

Pretermitting the issue of counsel's possible deficiency for failure to object to the DNA evidence on Confrontation Clause grounds, we conclude that Haygood has not shown prejudice: that is, he has not shown that the outcome of the trial would have been different had the DNA evidence not been admitted at trial.[25] Haygood's conclusory assertion that his conviction was "largely based" upon the DNA evidence is contradicted by the record. The jury heard direct evidence from the victim that Haygood forced her to engage in sex with him over a period of years; the victim further testified that Haygood was the father of her twins. Both A. W. and her mother testified as to the victim's prior consistent outcry statements, which the mother initially did not believe. Considering the totality of the evidence, we conclude that trial counsel's failure to object to the DNA testimony on a second ground did not affect the outcome of the trial.[26] Here, even assuming counsel's deficiency, Haygood has failed to demonstrate how this deficiency prejudiced his defense. Accordingly, this enumeration of error fails.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JANUARY 16, 2008.

*Robert D. Lenhardt*, for appellant.

---

[25] See *Mendoza, supra.*

[26] See *Whitner v. State*, 202 Ga. App. 608, 609 (415 SE2d 52) (1992) (trial counsel's failure to object to DNA evidence was not ineffective assistance where result would have been the same had DNA evidence been excluded).

*Kenneth W. Mauldin, District Attorney, Nancee E. Tomlinson, Assistant District Attorney*, for appellee.